**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BLAKE PARTNERS, INC.,<br>Individually and On Behalf of All Others<br>Similarly Situated, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. Action No. 07-4517 (WHW) |
| | : | |
| ORBCOMM, INC., JEROME B.<br>EISENBERG and ROBERT G.<br>COSTANTINI, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

| | | |
|---|---|---|
| LORRAINE DOWDEN, Individually and On<br>Behalf of All Others Similarly Situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. Action No. 07-4590 (WHW) |
| | : | |
| ORBCOMM, INC., JEROME B.<br>EISENBERG, and ROBERT G.<br>CONSTANTINI, JOHN DOES (1-100), and<br>ABC, INC. (1-100), | : | **OPINION** |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

      Erwin Weichel, David Peterson, and William Hunt (the "Weichel Group") move for (1) consolidation of Blake Partners, Inc. v. Orbcomm, Inc., Civ. Action No. 07-4517, and Dowden v. Obcomm, Inc., Civ. Action No. 07-4590, (2) appointment as Lead Plaintiff under section 27 of the Securities Act of 1933 (the "Securities Act"), and (3) approval of their selection of the law

NOT FOR PUBLICATION

firms of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and Abraham

Fruchter & Twersky LLP ("Abraham Fruchter") to serve as lead counsel and the law firm of

Cohn Lifland Pearlman Herrmann & Knopf LLP ("Cohn Lifland") to serve as liaison counsel.

Pursuant to Federal Rule of Civil Procedure 78, the Court decides this motion without oral

argument.  The Court grants Weichel Group's motion in its entirety.


**FACTS AND PROCEDURAL HISTORY**

On September 20, 2007, Plaintiff Blake Partners, Inc. ("Blake Partners") filed a putative

class action "on behalf of a class of all persons other than defendants who purchased the common

stock of [Orbcomm, Inc. ("Orbcomm")] pursuant and/or traceable to [Orbcomm's] initial public

offering ("IPO") on or about November 3, 2006 through August 14, 2007," (Compl. (Civ. Action

No. 07-4517) ("Blake Partners Compl.") ¶ 1), alleging violations of section 11 of the Securities

Act, (id. ¶¶ 28-37), and § 15 of the Securities Act, (id. ¶¶ 38-41).  Blake Partners named as

Defendants Orbcomm – "a satellite-based data communication company that operates a two-way

wireless data messaging system optimized for narrowband data communication worldwide," (id.

¶ 7) – Jerome B. Eisenberg – "Chief Executive Officer, President and Director of [Orbcomm],"

(id. ¶ 8(a)) – and Robert G. Costantini – "Chief Financial Officer and Vice President of

[Orbcomm]," (id. ¶ 8(b)) (collectively, the "Defendants").  Blake Partners states that "[o]n or

about October 30, 2006, [Orbcomm] filed with the SEC a Form S-1/A Registration Statement for

the IPO," (id. ¶ 18), and that "[o]n or about November 3, 2006, the Prospectus with respect to the

IPO . . . became effective and, including the exercise of the over-allotment, more than 9.2 million

shares of [Orbcomm's] common stock were sold to the public, thereby raising more than $101

NOT FOR PUBLICATION

million," (id. ¶ 19).  According to Blake Partners, however, "[t]he Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation," (id. ¶ 19).  Blake Partners alleges that certain specific statements contained within the Registration Statement, (see id. ¶¶ 20-22), "were each inaccurate statements of material fact because they failed to disclose that demand for [Orbcomm's] products was weakening as certain end-users were delaying purchases and international sales were being negatively impacted by delays in modifying regional applications," (id. ¶ 23).  Moreover, Blake Partners states that on May 25, 2007, Orbcomm held a secondary offering of common, selling "7 million shares of [Orbcomm] common stock for $11.50 per share," but asserts that the secondary offering registration statement also "did not disclose the facts that were omitted from the IPO filings."  (Id. ¶ 25.)  Blake Partners claims that "on August 14, 2007, [Orbcomm] issued a press release announcing its financial results for the second quarter of 2007," wherein and thereafter Orbcomm "revealed that it was experiencing weakening demand for its products and services and was not adding subscribers at the rates it had anticipated."  (Id. ¶ 26.)

On September 25, 2007, Plaintiff Lorraine Dowden filed a putative class action "on behalf of purchasers of the common stock of [Orbcomm], who purchased or otherwise acquired [Orbcomm's] common stock pursuant or traceable to [Orbcomm's] November 3, 2006 [IPO] . . . through August 14, 2007," (Compl. (Civ. Action No. 07-4590) ("Dowden Compl.") ¶ 1), alleging violations of § 11 of the Securities Act, (id. ¶¶ 41-50),  § 12(a)(2) of the Securities Act, (id. ¶¶ 51-59), and § 15 of the Securities Act, (id. ¶¶ 60-64).  The named Defendants consist of Orbcomm, Eisenberg, and Constantini.  (Id. ¶¶ 12-15.)  According to Dowden, "[o]n November

NOT FOR PUBLICATION

3, 2006, [Orbcomm] conducted its IPO," upon which it "filed a Registration Statement and Prospectus . . . with the SEC." (Id. ¶ 18.) Quoting the same allegedly inaccurate Registration Statement statements found in the Blake Partners Complaint, (id. ¶¶ 19-21; see Blake Partners Compl. ¶¶ 20-22), Dowden asserts:

> The statements . . . were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that demand for [Orbcomm's] products was softening; (2) that certain end-users were delaying purchases; (3) that international sales were being negatively impacted due to delays in developing and modifying regional applications; and (4) that [Orbcomm's] definition of billable subscriber communicators would have to be revised to reflect a more accurate gauge of when communicators were activated and billing.

(Dowden Compl. ¶ 22.) Dowden also notes Orbcomm's secondary equity offering on May 25, 2007, during which "[Orbcomm] and certain selling stockholders [including Eisenberg, Eisenberg's son, and Constantini] sold an additional 7 million shares of [Orbcomm's] stock to investors at a price of $11.50 per share, for gross proceeds of over $80 million." (Id. ¶ 23.) Dowden then quotes from Orbcomm's August 14, 2007 press release entitled "ORBCOMM Reports Record Revenues and Narrows Net Loss in Second Quarter 2007," (id. ¶ 24), and its August 14, 2007 earnings conference call with investors and financial analysts, (id. ¶ 25), after which Orbcomm's stock allegedly "declined $3.32 per share, or 29.7 percent, to close on August 14, 2007 at $7.86 per share, on unusually heavy trading volume," (id. ¶ 26).

The Weichel Group filed its motion for consolidation, appointment as lead plaintiff and for approval of selection of lead and liaison counsel on November 19, 2007.[1] Defendants filed a

---

[1] Additionally, on November 19, 2007, Class member Copper Rock Capital Partners, LLC ("Copper Rock") filed a motion to consolidate the actions, be appointed as lead plaintiff, and approve its choice of counsel, but withdrew that motion on November 29, 2007.

NOT FOR PUBLICATION

response to this motion on December 6, 2007, and on December 17, 2007, the Weichel Group

filed a reply.

## DISCUSSION

### I.     Consolidation

Consolidation is appropriate where there are actions involving common questions of law

or fact.  Fed. R. Civ. P. 42(a); see Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir. 1990),

cert. denied, 498 U.S. 920 (1990).  Where there are multiple class actions filed under the Private

Securities Litigation Reform Act of 1995[2] ("PSLRA"), a court shall not appoint lead plaintiff

until after it decides the motion for consolidation.  The PSLRA provides that:

> If more than one action on behalf of a class asserting substantially the same claim or
> claims arising under this subchapter has been filed, and any party has sought to
> consolidate those actions for pretrial purposes or for trial, the court shall not make
> the determination required by clause (I) [regarding appointment of lead plaintiff]
> until after the decision on the motion to consolidate is rendered. As soon as
> practicable after such decision is rendered, the court shall appoint the most adequate
> plaintiff as lead plaintiff for the consolidated actions in accordance with this
> subparagraph.

15 U.S.C. § 77z-1(a)(3)(B)(ii) (emphasis added).

Both actions, Blake Partners Compl. and the Dowden Compl., seek relief against the

same defendants, Orbcomm, Eisenberg, and Constantini, for violations of sections 11, 12(a)(2)

and 15 of the Securities Act.  15 U.S.C. §§ 77k, 77l(a)(2) and 77o.  Both actions allege that

plaintiffs purchased Orbcomm securities during the same time period, November 3, 3006 through

_____

[2]  The PSLRA governs "each private action arising under this subchapter that is brought
as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §
77z-1(a)(1).

NOT FOR PUBLICATION

August 14, 2007.  Both actions present the same or similar theories for recovery, namely, that

plaintiff investors purchased Orbcomm securities based on Defendants' materially false and

misleading public statements and concealment of material information.  The Court notes that

Defendants have not opposed Weichel Group's motion to consolidate but opposes Weichel

Group's appointment as lead plaintiff and selection of lead counsel.  Finding that these actions

arise from the same facts, the Court grants Weichel Group's motion to consolidate.

### II.    Appointment of Lead Plaintiff

Weichel Group has timely filed its motion for appointment as lead plaintiff under 15

U.S.C. § 77z-1(a)(3)(A) and (B).  Blake Partners published the first notice regarding the

pendency of these Actions on Business Wire, a national, business-oriented newswire service on

September 20, 2007 in compliance with 15 U.S.C. § 77z-1(a)(3)(A)(I), which requires that a

plaintiff who filed first to publish a notice to the class, within 20 days of filing the action,

informing class members of their right to file a motion for appointment as Lead Plaintiff.  "Not

later than 60 days after the date on which the notice is published, any member of the purported

class may move the court to serve as lead plaintiff of the purported class."  15 U.S.C. § 77z-

1(a)(3)(A)(i)(II).  Weichel moved for appointment as Lead Plaintiff within the 60-day period.

After Copper Rock withdrew its motion for appointment as lead plaintiff on November

29, 2007, no other potential class member has moved or opposed Weichel Group's motion for

appointment as lead plaintiff.  Only Defendants oppose this motion.

### A.    Standing

As a threshold matter, Weichel Group argues that Defendants do not have standing to

oppose their motion for appointment of lead plaintiff.  The Third Circuit noted, in dicta, a split of

NOT FOR PUBLICATION

authority among the district courts as to whether a defendant has standing to challenge the

adequacy of a lead plaintiff and his chosen counsel.  In re Merck & Co. Sec. Litig., 432 F.3d 261,

267 (3d Cir. 2005).[3]  Despite the split, the Third Circuit explained that the weight of authority

denying standing made "sense because defendants will rarely have the best interests of the class

at heart."  In re Merck Sec. Litig., 432 F.3d at 267 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)

(allowing only "a member of the purported plaintiff class" to rebut the lead plaintiff

presumptions)).

   While several district courts in the District of New Jersey have held that defendants lack

standing to challenge a plaintiff's motion for appointment as lead plaintiff, one district court in

the District of New Jersey considered the issues raised by defendants sua sponte while denying

standing for the defendants.  Fields v. Biomatrix, Inc., 198 F.R.D. 451 (D.N.J. 2000) (citing

Takeda v. Turbodyne Technologies, Inc., 67 F. Supp. 2d 1129, 1138 (C.D. Cal.1999) (denying

standing to defendants but noting that "[n]evertheless, the court may sua sponte raise and address

certain of the concerns addressed in defendants' statement"); see also In re The First Union Corp.

Securities Litigation, 2000 U.S. Dist. LEXIS 2267, *5 (W.D.N.C. Jan. 28, 2000) ("Regardless of

whether Defendants formally have standing (in which case this Court is obligated to consider

their arguments), nothing in the Reform Act prevents this Court from considering the arguments

raised and authorities cited by Defendants")).

---

   [3] Compare King v. Livent, Inc., 36 F. Supp. 2d 187, 190-91 (S.D.N.Y. 1999) (granting
the defendant standing to challenge a motion to appoint a lead plaintiff and lead counsel), with
Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 127 F. Supp. 2d 572, 575 n.2 (D.N.J. 2001)
(stating that the majority of courts have denied defendants the right to challenge "the adequacy of
lead plaintiffs and their chosen counsel" and citing cases), Gluck v. CellStar Corp., 976 F. Supp.
542, 550 (N.D. Tex. 1997) (deciding that defendants could not challenge the appointment of a
lead plaintiff), and Greebel v. FTP Software, Inc., 939 F. Supp. 57, 60 (D. Mass. 1996) (same).

**NOT FOR PUBLICATION**

Accordingly, the Court agrees with Weichel Group that Defendants lack standing to formally oppose their motion for appointment as lead counsel.  However, the Court will consider the issues raised by Defendants for the Court's benefit with the appropriate skepticism that Defendants do not have the best interest of the members of the class at heart.

**B.     Standard of Review for Appointment of Lead Plaintiff**

The PSLRA has established standards and procedures for selecting lead plaintiffs in securities fraud class actions.  It instructs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(i).  The PSLRA then creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure..[4]

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

This presumption may be "rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff

---

[4] Federal Rule of Civil Procedure 23(a) sets forth the following prerequisites for a class action: (1) numerosity, (2) common questions of law or fact, (3) typicality of claims or defenses, and (4) fair and adequate representation of the class by the representative parties.  Fed. R. Civ. P. 23(a).

NOT FOR PUBLICATION

incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). The Third Circuit has explained that in reviewing rebuttal evidence, courts should only consider whether anyone can prove that the presumptive lead will not fairly and adequately represent the interests of the class and not whether another movant is preferable. In re Cendant Corp. Litig., 264 F.3d 201, 268 (3d Cir. 2001).

> ### C.    Analysis

> #### 1.    Member Who Filed Complaint or Moved for Appointment

Weichel Group satisfies the first requirement for establishing presumptive adequacy under 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa) ("most adequate plaintiff . . . is the person or group of persons that has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i)"). Weichel Group is one of two purported class member who has moved for appointment as Lead Plaintiff within the time frame required by 15 U.S.C. § 77z-1(a)(3)(A)(i). The other purported class member, Copper Rock, has withdrawn its motion.

> #### 2.    Largest Financial Interest

The Court cannot determine that the Weichel Group "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). The Third Circuit has directed the district courts to consider, "among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." In re Cendant Corp. Litig., 264 F.3d at 263. The class period is between November 3, 3006 and August 14, 2007. On November 3, 3006, Orbcomm sold 9.2 million shares of common stock to the public and raised more than $101 million in its initial public offering. (Blake Partners

**NOT FOR PUBLICATION**

Compl. at ¶ 18.)  On May 25, 2007, Orbcomm sold an additional 7 million shares of common stock in its second equity offering at about $11.50 per share and raised about $80 million. (<u>Dowden</u> Compl. at ¶ 23.)  On August 14, 2007, Orbcomm issued a press release, revealing that it was experiencing weakening demand for its products and services and was not adding subscribers at the rates it had anticipated.  (<u>Blake Partners</u> Compl. at ¶ 26.)  As a result of this announcement, the price of Orbcomm common stock declined from about $11.18 per share to $7.86 per share on extremely heavy trading volume.  (<u>Id.</u> at ¶ 27.)

Blake Partners allege that it had purchased 2,000 shares of Orbcomm securities on November 3, 2006 at $11.00 per share.  It had sold 2,000 shares of Orbcomm securities on December 4, 2006 at $7.57.  (<u>See</u> Attachment A to <u>Blake Partners</u> Compl.)  Blake Partners had lost about $6,860 during the class period.  Dowden did not allege how many shares she purchased nor at what price.

Weichel Group states that they "collectively purchased 6,000 shares of ORBCOMM common stock and 30 ORBCOMM call options, expending $111,520 during the relevant time period."  Weichel's Brief in Support of Motion for Appointment As Lead Counsel, at 6-7 (Dkt. 11-2, filed Nov. 19, 2007) ("Weichel's Br.").  Erwin Weichel purchased 3,000 shares of Orbcomm common stock on June 28, 2007 at $16.86 per share, expending about $50,580.  <u>See</u> Exhibit B to the Declaration of Peter S. Pearlman ("Pearlman Decl.").  David Peterson purchased 1,000 shares of Orbcomm common stock on July 3, 2007 at $16.00 per share and purchased 30 call options at $3.90 per option, expending about $16,117.  <u>Id.</u>  William Hunt purchased 2,000 shares of Orbcomm common stock on July 2, 2007 at $16.62 per share, expending about $33,240.  The total expenditure is about $99,937.  The Court cannot account for the difference of

NOT FOR PUBLICATION

$11,583 between Weichel Group's claim that it expended $111,520 and the evidence provided by the Pearlman declaration that the individual members expended $99,937.

Another reason why this Court is skeptical towards Weichel Group's claim that they satisfy the second requirement of having "the largest financial interest in the relief sought by the class" is that their loss is minuscule compared with the loss suffered by Copper Rock.[5] Submitting under penalty of perjury, Copper Rock declared that it "purchased 1,997,627 shares of ORBCOMM common stock and suffered losses of $5,994,130." See DePalma Decl., at Exs. A and C. At most, the Weichel suffered a loss of about $49,037.[6]

A third reason why this Court is skeptical is that Weichel Group's investment is minuscule. Orbcomm issued about 16.2 million shares of common stock between its initial public offering and its secondary offering. Weichel Group only purchased about 6,000 shares.

That Weichel Group exaggerated its expenditure, that its losses pale in comparison to another purported class member, that its investment is minuscule, the Court does not determine that the Weichel Group"has the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

_____

[5] Although Copper Rock had withdrawn its motion for appointment as lead plaintiff, the Court finds it beneficial to review everything in the record. Jeffrey Gates, a vice president at Copper Rock, provided in a sworn statement and declared under penalty of perjury all transactions for the purchase of Orbcomm common stock that is the subject of this action. See Exhibit A to the Declaration of Joseph J. DePalma ("DePalma's Decl.").

[6] There is no indication that Erwin Weichel sold his shares. David Peterson sold 1,000 shares of Orbcomm common stock on August 10, 2007 at $11.75 per share, suffering a loss of $4,250. William Hunt sold 2,000 shares of Orbcomm on September 24, 2007 at $7.83, suffering a loss of $17,580. Assuming that Erwin Weichel sold his shares at the same price that William Hunt sold his shares (which is the lowest price presented by the group) and that David Peterson was entitled to claim total loss on his call options, Erwin Weichel would have suffered a loss of $27,090. David Peterson would have suffered an additional loss of $117. The total estimated loss for the group would be $49,037.

NOT FOR PUBLICATION

### 3.    Federal Rule of Civil Procedure 23

The PSLRA also requires that the Lead Plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to gain the presumption of being the "most adequate plaintiff."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Only two prerequisites for class certification, typicality and adequacy, under Rule 23(a) directly address whether Weichel Group is the "most adequate plaintiff."  Weichel Group must make a prima facie showing that they satisfy the typicality and adequacy requirements of Rule 23.  See Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 924 (3d Cir. 1992).

The typicality requirement is satisfied when the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues.  Weiss v. York Hosp., 745 F.2d 786, 809 & n.36 (3d Cir. 1984).  Where the claims asserted by the movant are based on the same legal theories and arise from the "same event or practice or course of conduct that gives rise to the claims of the class members," the typicality requirement is satisfied.  Grasty v. Amalgamated Clothing and Textile Workers Union, AFL-CIO, CLC, 828 F.2d 123, 130 (3d Cir. 1987).

NOT FOR PUBLICATION

The "fairly and adequately protect the interests of the class" prong is modified by Section 21D of the PSLRA which directs the Court to limit its inquiry to the existence of any conflict with the interests of the other members of the class.  This prong is satisfied when both the class representative and its attorney are capable of satisfying their obligations, and neither has interests conflicting with those of other Class members.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).  The Third Circuit explained that when assessing the adequacy of representation, courts should consider whether the proposed lead plaintiff "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class."  In re Cendant Corp. Litig., 264 F.3d at 265 (quoting Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1988)).

Further, the Third Circuit instructs courts to consider two additional factors in making its initial adequacy assessment.  First, the court should consider "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel."  Id. at 265-66.  The second consideration is only applicable when the movant is a group, rather than an individual.  Specifically, "[i]f the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class."  Id. at 266.  Courts should also consider whether a movant group is too large to adequately represent the class.  Id.  Finally, the Third Circuit

-13-

**NOT FOR PUBLICATION**

recognizes that there may be other reasons to justify a court's decision that the adequacy or typicality requirement has not been satisfied.  See id. at 268.

The Court agrees with Weichel Group that at this stage of appointing lead plaintiff pursuant to PSLRA, the Weichel Group has demonstrated typicality and adequacy.

Weichel Group purchased shares of Orbcomm common stock and lost money because of Orbcomm's alleged misrepresentations and concealment of material information.  Weichel Group's claims are based on the same set of facts and legal theories as absent class members.

The three individuals of the Weichel Group have represented that they will "endeavor to continue to provide fair and adequate representation and to continue to work together and with counsel to obtain the largest recovery for the class consistent with good faith and sound judgment."  (See Joint Declaration to Weichel Group's Reply Brief.)  Although there is no requirement in the PSLRA that a group be related, the court could disqualify a movant if "the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff" leads the court to conclude that the group "will not fairly and adequately represent the interests of the class."  In re Cendant Corp. Litig., 264 F.3d at 266.  "The twin goals of the PSLRA are to 'curb frivolous, lawyer-driven litigation, while preserving the investors' ability to recover on meritorious claims.'"  Winer Family Trust v. Queen, 503 F.3d 319, 326 (3d Cir. 2007) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., --- U.S. ----, 127 S. Ct. 2499, 2508 (2007)).

Here, there is a logical relationship between the three individuals in the Weichel Group that does not necessarily implicate that the group was formed by their lawyers.  "As a result [of a lack of guidance by the PSLRA in the selection the lead plaintiff], the courts have wrestled with

**NOT FOR PUBLICATION**

the interpretation of the lead plaintiff provisions in light of the legislative goal to remedy lawyer-driven lawsuits." Ann. Manual Complex Lit. § 31.31 (4th ed.)  In their joint declaration, Weichel Group stated that David Peterson is a financial planner and broker and that Erwin Weichel and William Hunt are Peterson's clients.  (See Joint Declaration to Weichel Group's Reply Brief.)  That David Peterson has experience and knowledge with financial investments help Weichel Group's case that they have skills and expertise to monitor a case involving securities fraud.

Despite the Court's skepticism towards Weichel Group's claim that it suffered the "largest financial interest in the relief sought by the class," Weichel Group has provided enough support that entitles them the presumption of "most adequate plaintiff."  Noting no opposition by any member of the purported plaintiff class, the Court grants Weichel Group's motion for the appointment as lead counsel.  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) ("The presumption described in subclause (I) [regarding the "most adequate plaintiff"] may be rebutted only upon proof by a member of the purported plaintiff class") (emphasis added).

In response to Defendants' objection, the Court notes that this determination will not preclude Defendants from objecting to the issue of lead plaintiff at the class certification stage. See In re Lucent Tech., Inc., Sec. Litig.,  194 F.R.D. 137, 150 (D.N.J. 2000).

### III.    Approval of Lead Counsel

Under the PSLRA "[t]he most adequate lead plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 77z-1(a)(3)(B)(v).  This language makes clear that the lead plaintiff's "power to 'select and retain' lead counsel belongs, at least in the first instance, to the lead plaintiff, and the court's role is confined to deciding

NOT FOR PUBLICATION

whether to 'approv[e]' that choice." In re Cendant Corp. Litig., 264 F.3d at 274.  Both the

Conference Committee Report and the Senate Report indicate that the court should not interfere

with lead plaintiff's choice of counsel, unless such intervention is necessary to "protect the

interests of the plaintiff class."  H.R. Conf. Rep. No. 104-369, at 35 (1995), reprinted in 1995

U.S.C.C.A.N. 730, 734; S. Rep. No. 104-98 at 11-12 (1995) reprinted in 1995 U.S.C.C.A.N. 679,

690.

　　　　Weichel Group selected the law firms of Coughlin Stoia and Abraham Fruchter as lead

counsel.  They also selected Cohn Lifland as liaison counsel.  These firms have provided resumes

that evidence substantial experience in the prosecution of shareholder and securities class

actions.  (See Pearlman Decl., Exs. C-E.)  Noting no opposition by any purported class plaintiffs,

the Court grants Weichel Group's motion for selection of Coughlin Stoia and Abraham Fruchter

as Lead Counsel and Cohn Lifland as liaison counsel.

　　　　Similarly, in response to Defendants' objection, the Court notes that this determination

will not preclude Defendants from objecting to the issue of the appointment of class counsel

under Rule 23(g) of the Federal Rules of Civil Procedure at the class certification stage.


**CONCLUSION**

　　　　Accordingly, Weichel Group's motion for consolidation, appointment as lead plaintiff

and selection of lead and liaison counsel is granted.


June 2nd, 2008　　　　　　　　　　　　　　　　**s/William H. Walls**
　　　　　　　　　　　　　　　　　　　　　United States Senior District Judge